UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | INDICTMENT NO: CR614-18 |
| | ) | |
| v. | ) | VIO:  18 U.S.C. §922(g)(1) |
| | ) | Possession of Firearm by a |
| ROBERT BEECHER, | ) | Convicted Felon |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE TO ROBERT BEECHER'S MOTION TO EXCLUDE STATEMENTS BY DEFENDANT (DOC 30)

Now comes the United States of America, by and through Edward J. Tarver, United States Attorney for the Southern District of Georgia, and files this response to Robert Beecher's motion to suppress statements. [Doc. 30.] In the motion, Beecher seeks to suppress statements made by him, alleging that they were taken in violation of the Fifth Amendment. The United States opposes this motion for the reasons shown below.

### Facts

In 2014, the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATFE) began conducting an investigation into Robert Beecher, a resident of Reidsville, Georgia. During the course of the investigation, agents learned that Mr. Beecher was a convicted felon and had been seen in photographs on social media websites possessing firearms. On or about May 7, 2014, agents conducted a non-custodial interview of Mr. Beecher at his workplace in Vidalia, Georgia.[1] On May 7, 2014, in the daytime hours, agents with the Toombs County Sheriff's Office (including Captain Kenny Clark), BATFE (including Special Agent Lorin Coppock), and the FBI (including Special Agent Stanley H. Slater) arrived at Mr. Beecher's workplace, Leprechaun Car Wash,

---

[1] This interview began while other agents were conducting the execution of a federal search warrant at Beecher's residence in Reidsville, Georgia.

Vidalia, Georgia. The agents were in Agent Coppock's unmarked pickup truck. The sirens and lights were neither visible, nor activated. Captain Clark approached Mr. Beecher and introduced the other agents, who were in plainclothes, to him. Agent Slater's gun was concealed and he never drew it. Agent Coppock's gun was never drawn, and he believes it was concealed. Mr. Beecher was visibly wearing a knife in his belt.

They asked him if it might be possible to speak in Leprechaun Car Wash's office. Mr. Beecher said that would that would not be a good place. The agents asked if there would be anywhere else private to talk. Mr. Beecher suggested the business's parking lot and began walking toward Agent Coppock's vehicle. Agent Coppock suggested talking inside of it. Mr. Beecher agreed. He sat in the front passenger seat, while Agent Coppock sat in the driver's seat and Agent Slater sat in the middle of the back seat. Once inside the vehicle, Agent Coppock told Mr. Beecher that he was not under arrest. Agent Coppock explained that Mr. Beecher was free to leave at any time. Mr. Beecher never indicated, in any way, that he did not want to talk with the agents. Nor did he request an attorney.

Mr. Beecher was cooperative throughout the interview. He was never in custody or handcuffed during the interview prior to being advised of—and waiving—his rights, nor was he ever threatened. There was no show of force by the agents. Mr. Beecher was at all times at liberty to stop answering questions and to leave. Mr. Beecher answered the agents' questions without hesitation or confusion. At one point in the interview, Mr. Beecher admitted that he was a felon in possession of firearms. He admitted ownership of a Marlin rifle, said his house contained a .22 caliber rifle belonging to his grandchildren, and suggested that there were five to six firearms total in house. He admitted to posting comments supportive of acts of violence against government employees on two websites. He admitted to being an affiliate of several "prepper" groups, who

were committed to readying themselves for social chaos, along with a motorcycle club containing members with "prepper" beliefs.

Agent Coppock stepped outside upon receiving text-message confirmation that agents had just found firearms while searching Mr. Beecher's home. He approached uniformed officers to request assistance in arresting Mr. Beecher. Mr. Beecher saw Agent Coppock and the uniformed officers walking around the vehicle and then asked if he was going to be arrested. He was informed that he was going to be arrested for being a felon in possession of firearms. Mr. Beecher was asked to step out of the vehicle. He did so and gave his keys to his boss, and was then handcuffed. He was placed in a patrol car and driven to the Tattnall County Sheriff's office in Reidsville, Georgia.

Upon his arrival there, Mr. Beecher was advised of his rights. He signed the BATFE Advice of Rights and Waiver form, waived his rights, and continued to speak with the agents. He elaborated on the general history of, and his personal involvement with, one "prepper" group. He admitted to purchasing a .45 caliber Hi Point pistol kept in his master bedroom. He identified two firearms contained in his home from photographs, a 30-30 rifle and a .22 caliber rifle. He said relatives had purchased them and given them to him. He further identified another .22 caliber rifle gifted to him, and three shotguns belonging to his father from photographs. From additional photographs of his home, Mr. Beecher identified an Iver Johnson pistol that had "been around forever," a Rossi single-shot rifle belonging to his grandchildren, and a .22 caliber rifle belonging to Mr. Beecher's father. He admitted to smoking marijuana that agents had found at his home. He admitted that the shed on his property contained another .22 caliber rifle.

Mr. Beecher also corroborated several entries on his criminal record, including an escape from jail, falsification of his identity for government documents, burglary, aggravated assault, and arson.

The United States respectfully requests that this Court deny the motion to exclude statements, as the May 7, 2014, statement was freely and voluntarily given during a non-custodial interview.

### Analysis

The government bears the burden of showing that a defendant's in-custody statements were obtained in compliance with the dictates of Miranda v. Arizona, 384 U.S. 436 (1966), and were voluntary. Missouri v. Seibert, 542 U.S. 600, 608 n.1, (2004); Colorado v. Connelly, 479 U.S. 157, 168 (1986); Miranda, 384 U.S. at 475. However, a defendant bears the burden of establishing that he was in custody and that his statements were made in response to government questioning. United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1978) ("[I]f a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilege against self-incrimination.")[2]; United States v. Charles, 738 F.2d 686, 692 (5th Cir. 1984), overruled on other grounds by United States v. Bengivenga, 845 F.2d 593 (5th Cir. 1988). "[P]olice officers are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977).

In this case, Mr. Beecher was not initially in custody when he voluntarily began his statement; he has failed to demonstrate that he was in custody; and additionally, when he was placed in custody, he was advised of his rights and continued making his voluntary statement. Therefore, the motion should be denied. The Eleventh Circuit has held that a subject is in custody for Miranda purposes when there has been a "formal arrest or restraint on freedom of movement of

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981.

the degree associated with a formal arrest." United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)); see also Stansbury v. California, 511 U.S. 318, 321 (1994) (noting that an officer's obligation to administer Miranda warnings does not attach until "there has been such a restriction on a person's freedom as to render him 'in custody'") (citation omitted); United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006). "The test is objective; '[t]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.'" United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000) (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). "[U]nder the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." Id. (quoting United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996)); see also United States v. Torkington, 874 F.2d 1441, 1445 (11th Cir. 1989) ("The relevant inquiry . . . is whether a reasonable person in [the defendant's] position would have felt a restraint on his freedom equivalent to that normally associated with a formal arrest.") (citing United States v. Phillips, 812 F.2d 1355, 1359-60 (11th Cir. 1987)). The subjective beliefs of the defendant and the interviewing officer about whether the defendant was free to leave are irrelevant. Berkemer, 468 U.S. at 425 n.4; Stansbury, 511 U.S. at 319.

    In determining whether a person is in custody, the Court should look at the totality of the circumstances. In applying this totality of the circumstances test, the Eleventh Circuit directs the Court to consider several factors, including whether the officers brandished weapons, touched the suspect, used language or a tone that indicated that compliance with the officers could be compelled, and where the interview took place. United States v. Brown, 441 F.3d 1330, 1349 (11th Cir. 2006); United States v. Long, 866 F.2d 402, 405 (11th Cir. 1989); accord United States v. Lizama, Doc. 211, No. CR413-028, at 6 (S.D.Ga. Sept. 19, 2013) (holding that suppression

"requires a finding that a reasonable person in [a defendant's] position would have inevitably concluded that [law enforcement] agents' polite requests for an interview . . . were in fact demands that could not be refused.").

Applying these factors, a reasonable person in Mr. Beecher's position would not have believed that he was utterly at the mercy of the police, away from the protection of any public scrutiny, and had to confess or face dire consequences. The agents talked in a conversational manner. They did not raise their voice. They did not confine him. They never threatened him. They told him he did not have to answer questions. They merely engaged in a consensual conversation. "Although the location of the interview is surely not dispositive in determining whether the interviewee was in custody, '[c]ourts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings'. . . .," such as Mr. Beecher's workplace parking lot—the location he suggested. United States v. Brown, 441 F.3d at 1348; see also United States v. Opoku, 210 Fed.Appx. 848, 2006 WL 3623692, at *4 (11th Cir. 2006) (holding that a defendant was not in custody where "he was never restrained by . . . agents or told that he could not leave," agents did not brandish their guns "or use any show of force," and he "moved freely about his apartment during the . . . interview, albeit under the agents' supervision as a safety precaution"). Additionally, in the case at hand, the agents specifically told Mr. Beecher that he was not under arrest, and that he was free to leave. This factor, too, negates the defendant's "in custody" argument. See Brown, 441 F.3d at 1347 ("Unambiguously advising a defendant that he is free to leave and is not in custody is a powerful factor in the mix, and generally will lead to the conclusion that the defendant is not in custody. . . ."); id. at 1349 (holding that a suspect validly consented to an interview where he "never exercised the most basic method at his disposal for avoiding discussions with police—simply not talking to them.").

Courts have regularly found valid consent in circumstances at least as intimidating as those presented on these facts. See, e.g., Florida v. Bostick, 501 U.S. 429 (1991) (holding consent to a search valid where armed law enforcement officers boarded a bus, picked out a passenger at random, announced they were narcotics agents, and requested consent to search a man's luggage); United States v. Butler, 102 F.3d 1191, 1197 (11th Cir. 1997) (holding consent to a search voluntary even though numerous law enforcement officers surrounded a residence to prevent its occupants from leaving).

The statements made by Mr. Beecher were freely and voluntarily given. There is no evidence of coercion or duress. There is no evidence of overbearing Mr. Beecher's will. In fact, the evidence is to the contrary. After the contested part of the interview, Mr. Beecher (having waived his right to counsel) gave additional statements to law enforcement elaborating on his earlier statements. These are not the actions of a coerced person.

## Conclusion

For the above stated reasons, the government moves this Court to deny the defendant's motion to suppress.

Respectfully submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY

*/s/ Carlton R. Bourne, Jr.*

Carlton R. Bourne, Jr.
Assistant United States Attorney
South Carolina Bar No: 007868

Post Office Box 8970
Savannah, Georgia 31412
Telephone Number:  912-652-4422

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 10th day of July, 2014.

                                        Respectfully submitted,

                                        EDWARD J. TARVER
                                        UNITED STATES ATTORNEY

                                        ***/s/ Carlton R. Bourne, Jr.***

                                        Carlton R. Bourne, Jr.
                                        Assistant United States Attorney
                                        South Carolina Bar No: 007868

Post Office Box 8970
Savannah, Georgia 31412
Telephone Number:   912-652-4422